George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Laurie Braaten and the Proposed Class*
*(additional counsel on signature page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Laurie Braaten, individually and on behalf of all others similarly situated, | Case No. 22-cv-4861-JD |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Apple Inc., | |
| Defendant | Jury Trial Demanded |

1

**CLASS ACTION COMPLAINT**

Plaintiff Laurie Braaten ("Plaintiff"), by her attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**FACTUAL ALLEGATIONS**</u>

1.    Apple Inc. ("Defendant") manufactures, distributes, markets, labels, and sells the Apple Watch SE smart watch ("Product") that Defendant represents to be "Swimproof":



2.    Unfortunately for consumers, as detailed below, the Product is not Swimproof as advertised.

**I.    THE IMPORTANCE OF WATER RESISTANCE FEATURES**

3.    Consumers have been increasingly concerned about protecting their smart watches from water damage.

4.    For example, according to reports, the number of smart watches offering resistance against damage from water and other liquids has grown significantly since these devices were first introduced several years ago, while non-water-resistant smart watches have declined.

5.    Consumers demand water resistant features because there are significant repair and replacement costs when a non-water-resistant smart watch is damaged or destroyed.

6.    The costs are significant to users, who must repair or replace expensive smart watches, and to the environment, when a device is discarded.

**CLASS ACTION COMPLAINT**

7.     This "hidden tax" due to the inability to withstand even minimal contact and immersion in water costs American consumers over $10 billion each year.

8.     Accidental damage is estimated as responsible for 95% of smart watch failures.

9.     Reports indicate that approximately one-third of all smart watch failures are due to liquid damage, such as accidental and temporary contact and/or immersion in water.

10.     In 2016, the International Data Corporation ("IDC") found that contact with water was the second largest cause of damage to smart electronic devices in the world.

11.     Aside from longer battery life and shatterproof screens, water resistance has become a key smart watch feature in demand by consumers.

12.     Thus, water-resistant features allow electronic companies to increase revenues by obtaining a price premium and/or increased units sold.

13.     Defendant provides that its watches have a water resistance of WR50.

14.     The WR50 water resistance rating, under International Organization for Standardization ("ISO") standard 22810:2010, means that the Product has a water resistance to withstand 50 meters/5 atmospheres/5 bars of pressure/165 feet.

15.     More specifically, WR50 means that it can be used for water activities, like swimming, showering, etc.

16.     Defendant describes the Product as "swimproof" and its marketing suggests and implies that this means "waterproof."

17.     Moreover, most consumers do not distinguish between "waterproof", "swimproof" or "water-resistant."

18.     A product is water-resistant if it can resist the penetration of water to some degree.

19.     The term "waterproof" indicates that the enclosure of the device is completely impervious to water.

20.     Since only hermetically sealed products may be truly waterproof, and to avoid disputes and ambiguities for watches, the term "waterproof" was replaced by the term "water-resistant" in the ISO 2281:1990 standard.

**CLASS ACTION COMPLAINT**

21.    Since then, only the term "water-resistant" has been used to describe electrical devices and the water resistance test standards set forth by the ISO.

22.    The replacement of the term "waterproof" with the term "water-resistant" by the ISO, however, has not changed the reasonable consumers' belief that the terms are synonymous.

23.    Defendant takes advantage of reasonable consumers' inability to distinguish between the two terms through marketing practices that superimpose the term "water-resistant" against a backdrop of visuals and statements that imply the Product is waterproof.

24.    Defendant attempts to substantiate its "water-resistance" claims, and disclaim any perceived "waterproof" claim, by referencing an ISO Standard that does not provide information relevant to the real-world use of the Product by consumers.

## II.    DEFENDANT PROMOTES THE WATER-RESISTANT FEATURES OF THE PRODUCT

25.    Defendant's advertising and marketing of the Product emphasizes its water resistance.

26.    Defendant displays the Product surrounded by a splash of water, stating "Works swimmingly in the water," with "water" written in blue text.



4
**CLASS ACTION COMPLAINT**

27.     When the "+" in the lower right corner is clicked, Defendant further provides that the Product is "water resistant 50 meters."

> **Works swimmingly in the water.**
>
> Apple Watch SE is water resistant 50 meters.[2] Dive right in and start tracking your splits and sets in the pool, or even map your route in open water.

**Works swimmingly in the water.**

Apple Watch SE is water resistant 50 meters.[2]
Dive right in and start tracking your splits and sets
in the pool, or even map your route in open water.

28.     Viewing footnote 2 provides further information regarding the water resistance, which is WR50 under ISO standard 22810:2010.

> 2. Apple Watch Series 7, Apple Watch SE, and Apple Watch Series 3 have a water resistance rating of 50 meters under ISO standard 22810:2010. This means that they may be used for shallow-water activities like swimming in a pool or ocean. However, they should not be used for scuba diving, waterskiing, or other activities involving high-velocity water or submersion below shallow depth. Series 7 is also rated IP6x dust resistant.

2. Apple Watch Series 7, Apple Watch SE, and Apple Watch Series 3 have a water resistance rating of 50 meters under ISO standard 22810:2010. This means that they may be used for shallow-water activities like swimming in a pool or ocean. However, they should not be used for scuba diving, waterskiing, or other activities involving high-velocity water or submersion below shallow depth. Series 7 is also rated IP6x dust resistant.

29.     A water resistance rating of 50 meters (WR50) means that the Product will be water-resistant enough to withstand shallow-water activities, such as swimming in an ocean or pool, but not enough to withstand high-velocity water activities like scuba diving or waterskiing.

30.     The Product is also advertised as able to track swimming activity and map swimming routes.

> **Works swimmingly in the water.**
>
> Apple Watch SE is water resistant 50 meters.[2] Dive right in and start tracking your splits and sets in the pool, or even map your route in open water.

**Works swimmingly in the water.**

Apple Watch SE is water resistant 50 meters.[2]

5

==Dive right in== and start tracking your splits and sets ==in the pool==, or even ==map your route in open water==.

31.     Defendant further emphasizes that the Product is "swimproof," placing this representation towards the top of the abbreviated Product summary.

**Apple Watch SE**

From $279

Buy

Learn more ›

44mm or 40mm

Swimproof²

**III.     THE PRODUCT FAILS TO MEET THE PROMISED WATER-RESISTANT, SWIMPROOF ABILITIES**

32.     Despite using an image of the device in water and using marketing language like "works swimmingly in the water" and "swimproof," the Product is not water-resistant as understood by Plaintiff and consumers, and routinely fails in brief encounters with water.

**A.     ISO STANDARD AND TESTING**

33.     ISO standard 22810:2010 provides information on testing conditions.

34.     Before any testing is done, the operative watch components are actuated and then reset to their normal position.

35.     Throughout the testing, which includes a condensation test, water resistance tests by immersion, and a water-resistant test by air pressure, the ambient and water temperatures are held equal to each other, maintained between 18 °C and 25 °C (64.4 °F and 77 °F).

36.     The ISO Standard is not intended for smart watches, does not apply to real world use conditions of smart watches, and is not understood by most consumers, including Plaintiff.

37.     First, the ISO tests watches when they are brand new, a condition that will almost never be met in the real world.

38.     In real-world conditions, the user will not have their smart watch subjected to potential water damage immediately after they open it.

39.     In real-world conditions, the Product will not be immersed in purified, fresh water.

**CLASS ACTION COMPLAINT**

40.     Over time, a smart watch will come into contact with bodily oils, cosmetics, suntan lotions, and water, which all contain corrosive agents.

41.     This causes gradual corrosion and wearing out of parts, seals, conformal coatings, foams, and adhesives, causing the permeability of the device to degrade over time.

42.     Second, the Product's water protection barriers, such as coatings, glues, gaskets, meshes, and membranes are porous, and only "deter" water from entering.

43.     These barriers degrade and fail, especially when the Product is subjected to various temperatures, pressures, and mechanical force conditions.

44.     Water entering the smart watch may still contact the junction of some wires, causing new circuit paths, resulting in leakage currents or short circuits.

45.     Third, the general testing conditions for the ISO's tests are within temperatures from 18 °C and 25 °C (64.4 °F and 77 °F).

46.     However, the temperature in pools, sinks, and bathtubs typically exceeds the suggested temperature range under the ISO Standard, which impacts the efficacy of the Product's physical sealing.

47.     In real-world usage, consumers expect water-resistance translates to the device being moisture proof, i.e., carried inside a backpack or purse, used to play music in a hot shower, and moved rapidly between a cold indoor office to a hot and humid environment without sustaining damage.

48.     Fourth, the ISO Standard does not specify whether a sample is energized when tested, yet whether a smart watch is on when submerged will affect its ability to resist water.

49.     If the smart watch is on and running various programs, the internal temperature and pressure will be elevated, and the electrical bias can accelerate electromigration.

50.     These factors may affect the depth and duration of water contact the smart watch can withstand.

51.     Fifth, the acceptance criteria for the water resistance tests are vague, requiring only that water entering a device not affect its normal operation or impair its safety.

52.     For example, one lab may rate a smart watch as "water-resistant" as long as a short

**CLASS ACTION COMPLAINT**

1  circuit does not occur, and yet accept the fact that there was a reduction of acoustic performance.

2      53.    When consumers buy a smart watch billed as water-resistant, they expect it will be

3  reliable in most situations that involve water, including but not limited to washing dishes, exercising,

4  and various forms of accidental "dunks" in a sink, toilet, or pool.

5      54.    Despite consumers expectations to the contrary based upon Defendant's marketing,

6  an Apple Support article on Defendant's website notes that the Products may not, in fact, be water-

7  resistant:

8

9  Showering with Apple Watch Series 2 and newer is ok,     Showering with Apple Watch Series 2 and

10  but we recommend not exposing Apple Watch to soaps,     newer is ok, but we recommend not exposing

   shampoos, conditioners, lotions, and perfumes as they     Apple Watch to soaps, shampoos, conditioners,

   can negatively affect water seals and acoustic     lotions, and perfumes as they can negatively

11  membranes. Apple Watch should be cleaned with fresh     affect water seals and acoustic membranes.

   water and dried with a lint free-cloth if it comes in     Apple Watch should be cleaned with fresh water

12  contact with anything other than fresh water.     and dried with a lint free-cloth if it comes in

13                                                      contact with anything other than fresh water.

14                          *   *   *

15  Water resistance isn't a permanent condition and may     Water resistance isn't a permanent

   diminish over time. Apple Watch can't be rechecked or     condition and may diminish over time.

16  resealed for water resistance. The following may affect     Apple Watch can't be rechecked or

   the water resistance of your Apple Watch and should     resealed for water resistance. The

17  be avoided:                                           following may affect the water

                                                          resistance of your Apple Watch and

18                                                        should be avoided:

    • Dropping Apple Watch or subjecting it to other     • Dropping   Apple   Watch   or

19     impacts.                                              subjecting it to other impacts.

    • Exposing Apple Watch to soap or soapy water (for     • Exposing Apple Watch to soap or

20     example, while showering or bathing).               soapy water (for example, while

                                                            showering or bathing).

21  • Exposing Apple Watch to perfume, solvents,          • Exposing Apple Watch to perfume,

     detergent, acids or acidic foods, insect repellent,     solvents, detergent, acids or acidic

22     lotions, sunscreen, oil, or hair dye.               foods, insect repellent, lotions,

                                                            sunscreen, oil, or hair dye.

23  • Exposing Apple Watch to high-velocity water (for    • Exposing Apple Watch to high-

     example, while water skiing).                           velocity water (for example, while

24  • Wearing Apple Watch in the sauna or steam room.     water skiing).

25                                                        • Wearing Apple Watch in the sauna

                                                            or steam room.

26

27      55.    Plus, not all Product bands are water resistant, such as those made of stainless steel

28

**CLASS ACTION COMPLAINT**

1  and leather.

2

3  Not all bands are appropriate for water use. For example, the stainless steel and leather bands aren't water resistant and shouldn't be exposed to liquids.

4  Not all bands are appropriate for water use. For example, the stainless steel and leather bands aren't water resistant and shouldn't be exposed to liquids.

5  56.  However, such statements are inconsistent with the Product's water

6  resistance/swimproof marketing campaigns, which state it is water resistant 50 meters and depict

7  the Product being splashed in water.

8  57.  Moreover, Plaintiff and the Class Members are not presented with these statements,

9  and are not otherwise told this information, prior to purchasing the Product, but rather only learn

10  this information after it begins malfunctioning, or ceases to function entirely, as a result of liquid

11  damage.

12  58.  A study supported by the National Key Research and Development Program of China

13  and the Center for Advanced Life Cycle Engineering, University of Maryland at College Park,

14  concluded that manufacturers, such as Defendant, regularly make false and deceptive

15  representations with respect to the water-resistant properties of their devices.

16  **B.    THE PRODUCT IS NOT WATER-RESISTANT AS ADVERTISED**

17  59.  A water resistance of 50 meters signifies that the Product's enclosure is water

18  resistant at 50 meters/5 atmospheres/5 bars of pressure/165 feet.

19  60.  However, the Product suffers frequent damage after being dropped into, or contacted

20  with, water or other liquids, for a few minutes or even seconds.

21  61.  However, Defendant refuses to repair or replace liquid-damaged Products under its

22  warranty.

23  62.  Defendant's representations regarding the water resistance capabilities of the Product

24  are false because it does not perform as advertised under normal, real-world conditions and use.

25  63.  The commercials, presentations, and website statements are only a few examples of

26  the advertisements Defendant created and distributed representing that the Product will not sustain

27  damage if submerged in, or contacted with, water, or other common liquids.

28  64.  Upon information and belief, Defendant has created internal indicators to detect

9

**CLASS ACTION COMPLAINT**

1  whether the Product has been exposed to liquids, in order to deny customers their warranty repair

2  and replacement requests.

3        65.     Defendant's policy is to deny warranty repair and/or replacement when this indicator

4  is activated.

5        66.     This means buyers are told one thing when they buy the Product, based on the

6  representations, but something else when they need after-sales service or replacement.

7        67.     Purchasers are typically told that the price of repair exceeds the price at which they

8  purchased the Product new.

9        68.     Plaintiff and other reasonable consumers purchased the Product believing its water-

10  resistant capabilities were accurately represented.

11        69.     Plaintiff and other reasonable consumers either (1) would not have purchased the

12  Product if they had known about the misrepresentations and omissions, (2) would have purchased

13  it on different terms, i.e., at a lower price, (3) purchased a different smart watch, (4) not purchased

14  it at all, or (5) purchased it with diminished expectations about its water-resistant abilities.

15        70.     Plaintiff and Class Members reasonably relied to their detriment on Defendant's

16  misleading representations and omissions.

17        71.     Defendant's false, misleading, and deceptive misrepresentations and omissions are

18  likely to continue to deceive and mislead reasonable consumers and the general public, as they have

19  already deceived and misled the Plaintiff and Class Members.

20        72.     In making the false, misleading, and deceptive representations and omissions,

21  Defendant knew and intended that Plaintiff and Class Members would pay a premium for products

22  represented as water resistant over comparable products not so marketed.

23        73.     Plaintiff and Class Members were deprived of the benefit of the bargain because they

24  paid for a Product that was water resistant but received a Product that was not water resistant.

25        74.     As an immediate, direct, and proximate result of Defendant's false, misleading, and

26  deceptive representations and omissions, Defendant injured Plaintiff and Class Members.

27        75.     The product Plaintiff and the Class Members received was worth less than the

28  Product for which they paid.

**CLASS ACTION COMPLAINT**

76.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Product over the cost of competitive products that are not represented as water resistant.

77.     Consequently, Plaintiff and the Class Members suffered injury-in-fact and lost money as a result of Defendant's wrongful conduct.

**PARTIES**

78.     Plaintiff is a citizen of Texas, residing in Houston, Harris County.

79.     During the Class Period, Plaintiff purchased the Apple Watch SE from Apple.com for no less than $279.00.

80.     Plaintiff viewed and relied upon Defendant's representations that the Product was swimproof and water resistant as described herein prior to her purchase and believed it could be used while swimming or going into a pool.

81.     In or around January 2022, one of Plaintiff's six rescue dogs jumped into the shallow section of a pool, not deeper than three feet.

82.     Though Plaintiff was wearing her Apple Watch, she immediately jumped in that shallow section to help her dog.

83.     Plaintiff's use of the device was consistent with its operating instructions and the representations regarding its expected water-resistant capabilities.

84.     Shortly after this incident, the Product became unstable and began to glitch and malfunction.

85.     Since that time, the Product's effectiveness as a reliable device has been diminished.

86.     Based on Plaintiff's experience and knowledge, and Counsel's investigation, it is a known issue that a significant percentage of Apple Watches exposed to small amounts of water, in the manner experienced by Plaintiff, results in the watch becoming damaged and its functionality becoming diminished due to faulty sealing.

87.     Defendant is a California corporation with its principal place of business in Cupertino, Santa Clara County, California.

**CLASS ACTION COMPLAINT**

88.     Defendant is a global leader in the manufacture and sale of consumer electronics.

89.     Defendant's products include smart phones, computers, tablets, and smart watches.

90.     Consumers trust Defendant to truthfully represent the capabilities of their products.

91.     Apple is considered the "gold standard" for personal consumer electronics, which is why its devices, including its Apple Watches, cost more than smart watches sold by competitors.

92.     Defendant manufactures, markets, sells Apple Watches directly to consumers across the country from its brick-and-mortar Apple stores, from Apple.com, and through third-party physical stores and online.

93.     Plaintiff would be willing to purchase the Product again if assured it possessed the water-resistant capabilities it was advertised as having.

94.     Plaintiff is unable to rely not only on the representations of Apple Watches, but other similar smart watches touted as being resistant to water, even though she would like to.

## JURISDICTION AND VENUE

95.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)(A).

96.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) ("Class Action Fairness Act" or "CAFA").

97.     The proposed class has at least 100 members, because the Product has been widely sold within this State for several years.

98.     Plaintiff is a citizen of a State different from Defendant.

99.     Plaintiff alleges the amount-in-controversy of the claims of the proposed Class exceed $5,000,000, exclusive of interest and costs.

100.    Venue is proper in this District under 28 U.S.C. § 1391(d) because Defendant's principal place of business is in Santa Clara County and it is considered to reside within this District and has its most significant contacts within this District.

101.    Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, features and/or attributes of the Product originated within this District at Defendant's headquarters.

**CLASS ACTION COMPLAINT**

102.    This Court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

### CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this proposed class action pursuant to Fed. R. Civ. P. Rule 23, and seeks to represent the class ("Class") defined below:

> All residents of the United States who purchased the Product at any time from August 25, 2018 to time of judgment in the United States for personal or household use.

104.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

105.    Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Class, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

106.    The members of the Class are so numerous that joinder of all Class Members is impracticable.

107.    Defendant sold the Product to no less than tens of thousands persons.

108.    The Class consists of thousands of persons, and joinder is impracticable.

109.    Common questions of law or fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and Class Members are entitled to injunctive relief and damages.

110.    Plaintiff's claims and her basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions with respect to the Product's water-resistance capabilities.

111.    Plaintiff sustained damages from Defendant's wrongful conduct, of the precise type

**CLASS ACTION COMPLAINT**

1    Defendant promised she would not.

2        112.    Class Members experienced similar types of damage to what Defendant promised

3    the Product would withstand.

4        113.    Plaintiff will fairly and adequately protect the interests of the Class and has retained

5    counsel that is experienced in litigating complex class actions.

6        114.    Plaintiff has no interests which conflict with those of the Class.

7        115.    No individual inquiry is necessary since the focus is only on Defendant's practices

8    and the class is definable and ascertainable.

9        116.    Plaintiff anticipates this Court can direct notice to Class Members, by publication in

10   major media outlets and the Internet.

11       117.    A class action is superior to other available methods for adjudication of this

12   controversy, since individual actions would risk inconsistent results, be repetitive and are

13   impractical to justify, as the claims are modest relative to the scope of the harm.

14       118.    The prerequisites to maintaining a class action for equitable relief are met as

15   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making

16   appropriate equitable relief with respect to the Class as a whole.

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

# FIRST CLAIM
## Breach of Express Warranty
(On Behalf of the Class)

119.    Plaintiff incorporates all preceding paragraphs.

120.    Defendant promised and expressly warranted that the Product had water resistant and swimproof capabilities.

121.    Plaintiff and Class Members relied on these representations when purchasing the Product.

122.    All conditions precedent to Defendant's liability under the contract, including notice, have been performed by Plaintiff and Class Members.

123.    Defendant has breached the terms of its express warranties by failing to provide the Product as warranted.

124.    Plaintiff and Class Members used the Product in a manner consistent with its operating instructions and Defendant's representations.

125.    Plaintiff and Class Members performed their duties under the express warranties or have been excused from such performance as a result of Defendant's conduct.

126.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff and Class Members have suffered economic damages, including costly repairs, loss of use, replacement costs, substantial loss in value and resale value of the Product.

# SECOND CLAIM
## Violation of the Magnusson-Moss Warranty Act,
## 15 U.S.C. §§ 2301 *et seq.* ("MMWA")
(On Behalf of the California Class)

127.    The Products share common defects in that they are unable to provide water resistant and swimproof capabilities consistent with Defendant's representations.

128.    Defendant marketed the Product as being water-resistant and swimproof and offered certifications attesting to this fact.

129.    Defendant was aware of the defects described in this Complaint, from Plaintiff and/or other sources.

**CLASS ACTION COMPLAINT**

130.    However, the cost of this defect was borne by Plaintiff and Class Members.

### THIRD CLAIM
**Breach of Implied Warranty of Merchantability
and Fitness for a Particular Purpose**
(On Behalf of Class)

131.    Defendant engaged in a focused marketing campaign to consumers concerned about water damaging their smart watches and has reason to know that Plaintiff and Class Members purchased the Product for a particular purpose, e.g., to be used in and around water and during water activities.

132.    Plaintiff and Class Members relied on Defendant's skill or judgment to furnish devices that accomplished that purpose.

133.    Defendant breached the implied warranty of fitness because the Product was incapable of satisfying that purpose, due to its defects alleged above.

134.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members were injured in the amount they overpaid for the Product, and would not have purchased it or would have paid less had they known the truth.

### FOURTH CLAIM
**Violation of Unfair Competition Law
Cal. Bus. & Prof. Code §§ 17200 *et seq.***
(On Behalf of the Class)

135.    Plaintiff incorporates all preceding paragraphs.

136.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

137.    Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

138.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made materially false representations and

**CLASS ACTION COMPLAINT**

omissions.

139.    Defendant made representations that the Product was water resistant when it was not.

140.    Defendant is aware that its representations and omissions about the Product were and continue to be false and misleading.

141.    Defendant had an improper motive, to derive financial gain at the expense of accuracy or truthfulness, in its practices related to the marketing and advertising of the Product.

142.    Defendant's misrepresentations of material facts also constitute an "unlawful" practice because they violate the laws and regulations cited herein, as well as the common law.

143.    Defendant's conduct was, and continues to be, unfair in that its injury to countless purchasers of the Product is substantial and not outweighed by any countervailing benefits to consumers or to competitors.

144.    Plaintiff and Class Members have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Product, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception to the detriment of consumers.

**FIFTH CLAIM**
**Violations of the False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
(On Behalf of the Class)

145.    Plaintiff incorporates all preceding paragraphs.

146.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

147.    Defendant committed acts of false advertising, as defined by §§ 17500, *et seq.*, by misrepresenting that the Product had water resistant capabilities.

148.    Defendant knew or should have known through the exercise of reasonable care that

17
**CLASS ACTION COMPLAINT**

these representations and other misrepresentations for the Product were false, misleading and/or deceptive.

149.    Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

150.    Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the capabilities of its Product.

151.    Consumers, including Plaintiffs and members of the Class, were among the intended targets of such representations.

152.    As a result of Defendant's conduct, Plaintiffs and members of the Class were harmed and suffered actual damages as a result of Defendant's FAL violations because

      a.   they would not have purchased the Product on the same terms if they knew that the Product did not offer water resistant capabilities as represented;

      b.   they paid a price premium for the Product based on Defendant's misrepresentations; and

      c.   the Product does not have the characteristics, attributes, features, uses, benefits, or abilities as promised, namely the represented water-resistant capabilities.

153.    Plaintiffs and members of the Class have been damaged in the full amount of the purchase price of the Product or in the difference in value between the Product as warranted and the Product as actually sold.

**CLASS ACTION COMPLAINT**

**SIXTH CLAIM**
**Violations of the Consumer Legal Remedies Act,**
**Cal. Civ. Code §§ 1750, *et seq.***
(On Behalf of the Class)

154.    Plaintiff incorporates all preceding paragraphs.

155.    Defendant's representations and omissions concerning the quality, attributes, features, benefits, and effectiveness of the Product were false and/or misleading as alleged herein.

156.    Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in deciding to purchase the Product.

157.    Defendant's false and misleading representations and omissions were made to Plaintiff and Class Members, as they were prominently displayed and featured throughout the advertising and marketing of the Product, in digital, print, and television media.

158.    Defendant knew or should have known its representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

159.    Defendant's practices, acts, and course of conduct in marketing and selling the Product were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to their detriment.

160.    Defendant's misrepresentations and omissions were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

       a.  In violation of Civil Code § 1770(a)(5), Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it does not have;

       b.  In violation of Civil Code § 1770(a)(7), Defendant represented that the Product was of a particular standard, quality, or grade, which it is not;

       c.  In violation of Civil Code § 1770(a)(9), Defendant advertised the Product with an intent not to sell the Product as advertised; and

       d.  In violation of Civil Code § 1770(a)(16), Defendant represented the Product had been supplied in accordance with its previous representations, when it was not.

161.    Defendant profited from the sale of the falsely, deceptively, and unlawfully

1   advertised Product to unwary consumers.

2        162.   Defendant's wrongful business practices constituted, and constitute, a continuing

3   course of conduct in violation of the CLRA.

4        163.   Defendant's wrongful business practices were a direct and proximate cause of actual

5   harm to Plaintiff and to each Class Member.

6        164.   If Defendant is not restrained from engaging in these types of practices in the future,

7   Plaintiff and class members will continue to suffer harm.

8        165.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff sent a CLRA Notice

9   to Defendant on November 3, 2022 via Certified Mail and on November 4, 2022 via First Class

10  Mail, which detailed and included these violations of the CLRA, demanded correction of these

11  violations, and provided the opportunity to correct these business practices, prior to seeking

12  monetary damages under the CLRA. Records from USPS show the Notice was received by

13  Defendant on November 7, 2022 and November 8, 2022. Because Defendant has not corrected its

14  conduct within thirty days of receipt of the Notice, Plaintiff amends her initial complaint to add a

15  damages claim pursuant to the CLRA.

16

17                    **JURY DEMAND AND PRAYER FOR RELIEF**

18        Plaintiff demands a jury trial on all causes of action so triable.

19        WHEREFORE, Plaintiff, on behalf of herself and Members of the Proposed Class, prays for

20  judgment and relief on all of the legal claims as follows:

21        A.   Certification of the Class, certifying Plaintiff as representative of the Class, and

22             designating Plaintiff's counsel as counsel for the Class;

23        B.   A declaration that Defendant has committed the violations alleged herein;

24        C.   For restitution, disgorgement, and monetary damages pursuant to, without limitation,

25             the California Business & Professions Code §§ 17200, *et seq.* and 17500 *et seq.*, and

26             California Civil Code §§ 1750, *et seq.*;

27

28

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.      For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.* and California Civil Code §§ 1750, *et seq.* and 1780;

E.      For interest at the legal rate on the foregoing sums;

F.      For attorneys' fees;

G.      For costs of suit incurred; and

H.      For such further relief as this Court may deem just and proper.

Dated:   January 24, 2023

Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Spencer Sheehan (*Pro Hac Vice* forthcoming)
*spencer@spencersheehan.com*
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Rd Ste 412
Great Neck, New York 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800

*Counsel for the Plaintiff and the Proposed Class*

**CLASS ACTION COMPLAINT**